Case No. 3-18-0244 The People of the State of Illinois at Belize by Kelly Pratt v. Charles Cheffer, appellant by Neal Patel Mr. Patel? Good morning. Good morning, Justice McCabe. Justice Carter, Justice Wright, Counsel for the State. I think this case is a little more straightforward than the previous one. Less attorneys, less defendants. I think the case law is also relatively straightforward. We're not suggesting that the law that's applicable in a situation such as this is anything besides straightforward. My two colleagues didn't have the advantage of being on the case before. Yes, I was wondering what you were referring to. Did you argue with the case ahead? I did watch it, Judge, and there's contracts and leases and attorneys and summary judgment, too, and so the possibility of previous cases. Well, we've been anxiously awaiting this case. I think it was continued. Yes, Your Honor. So, please proceed. The issue in this case is relatively straightforward. Was there sufficient evidence produced at trial to support guilt beyond a reasonable doubt for Mr. Cheffer? And if we review the record in this case, I believe the simple facts of the case are that the testimony or the evidence that supported guilt came down to a single witness, in this case the named victim in the offense. And when we take a look at her testimony, while her testimony may be sufficient to prove her guilt, it must be positive and credible. And when we take a look at the entirety of her testimony and we compare it to some of the other issues that came up, for example, the lack of corroborating evidence from other witnesses, from mental health history, and the absence of other corroborating evidence, Judge, Your Honors, I don't believe that there is sufficient evidence beyond a reasonable doubt. I went through a number of examples in my opening brief as it relates to some of the inconsistencies, but I think the most important one that is worth consideration is when this took place. My client was charged with essentially sexual assaults that took place on two different occasions, and he was acquitted of the second set of offenses, which were alleged to have taken place initially on February 26th of 2014. The bill of particulars that was filed limited that time period to between the 25th and the 27th of February of that year. The initial charge alleged that the first offense, the one he was convicted of, took place sometime within the entire month of January. That was further narrowed through a bill of particulars from the 27th through the 29th. As we review the testimony in this case, we see that when this took place is disputed. Essentially, my client was charged with babysitting the alleged victim in this case and her brother. The alleged victim testified that it took place in the middle of January. She also testified she couldn't recall. She testified that she wasn't positive that it took place in January of 2014, perhaps the beginning of the year. She had given previous testimony in an order of protection hearing, which took place in 2015, where she said that she had no contact with Mr. Sheffer in 2014 and he was last seen in November of 2013. And that when this took place, she was 13 years old and it took place in either the spring or the fall. And when we look at that, she was 13 years old at the end of 2013. And so that means it could coincide with November of 2013 or several months later than the spring, which falls outside of the alleged date ranges. She also testified that it took place four months before her 14th birthday, which puts that as being within the range of July of 2014. Even if she meant her 13th birthday, that puts it within July of 2013. And so we have this wide date range from her. The other witness who testified in the case, who was apparently present at the home when this assault later took place, she had left, she testified that it took place in the first two weeks of 2014. There is only one instance of time that is corroborated from that testimony with the victim's testimony. The person who should be giving us the best testimony as to when this took place is the mother, who said, I was working a straight 48 for my job, and that took place from the 25th through the 27th. None of that coincides with what the other witnesses have to say. And the reason why the date is... Why is she a better, more credible person to measure the date, as opposed to the girlfriend that was there and left? The reason why I would say that she's the better person is because, since it is her child, she would know when she had to work and when she would have to kind of set up that babysitting. And so I would say that if there were issues with that, particularly when the bill of particulars was filed, the easiest thing for the state's witnesses is to say, how do you know when this took place? And none of that was on the record, but I can presume that they were able to narrow it down to that 48-hour window because it coincided with what the victim's mother had to say. And so when she says... These points were argued before the judge, and the decision didn't go your way. That's correct. But you're asking us to re-evaluate the evidence on whether the inconsistency in the date makes the victim's testimony less credible? I'm not asking Your Honors to re-evaluate that. I'm pointing out that when you take this inconsistency and you start to compare it to... Why does this inconsistency matter? Well, when an assault took place, I think, is highly relevant. Who, what, where, when, and why. But part of the reason why the date is an issue is because Mr. Sheffer says that I didn't babysit in November or in January of 2013. I babysat at my grandfather's house in November of 2013, not in January. So that means everything that was alleged to have taken place, it changes, particularly when the victim herself has said in prior sworn testimony that I didn't see him in the beginning of 2014. I saw him at the end of 2013, potentially during this November timeframe. And the reason why I think that the date is relevant is because when we take a look at what evidence of what took place during this first babysitting incident took place, there's no corroboration between the victim in this case and the other witness, my client's girlfriend. Generally, that's the prior factor besides that conflict. That is correct, but the case law says pretty clearly that if the evidence in the case is so unreasonable that a reasonable person should not find guilt beyond a reasonable doubt, this court has the power to set that aside. And the only thing in this case that was straightforward from the named victim in this case was that she was assaulted. No corroborating evidence of anything that took place beforehand was given by the victim. For example, the state made issue that the occurrence witness, Ms. Pristis, said that they were inappropriately cuddling on a chair. The victim denied that. Ms. Pristis said they were wrestling. The victim never mentioned that wrestling took place. She specifically said no other physical contact took place. She said that when Ms. Pristis left the house, it was Mr. Shepherd who gave her a ride home. Ms. Pristis said my father came and gave me a ride home. All these different inconsistencies begin to cast doubt onto what actually took place that day, particularly when we don't know when it took place. And when this date range is narrowed down to 48 hours, we're babysitting for two nights. Did this take place on the first night or the second night? If it took place on the first night, why go back the second night? If it took place on the second night, where's any evidence or testimony as to what took place on the first night? Did you just say if it took place on the first night, why go back on the second night? Yes. Who are you referring to? If something inappropriate took place on the first night of the 48 hours the mom says the babysitting took place over, she didn't tell anybody or say anything. So you're referring to the teenage girl? Yes. I wasn't clear whether you were referring to your client or the teenage girl. The victim, Your Honor. So you're saying she shouldn't have been around on the second night since she was? We shouldn't believe that something bad happened on the first night? I think that if – I think I understand the point that Your Honor's trying to make. I don't think by itself a delayed outcry may render a decision in this case fatal, but it is certainly something that can be considered as a whole. And so when we have all this inconsistent testimony, the lack of corroboration as to what actually took place at the grandfather's house that night, the idea or the potential that she went back the second night and didn't raise any issues or that whatever behaviors took place the first night didn't cause any concerns for the second night, I think those are things that can all be taken as a whole to say there are problems with this testimony. I now understand your argument. Yes, Your Honor. It sometimes appears to me that in your argument you're implicitly indicating that in the absence of cooperative evidence that there would be a federal approval, which the courts have rejected for many years now. And I agree with that, Your Honor. And that's why the first thing I opened up with was that a single witness, if positive and credible, can't sustain guilt beyond a reasonable doubt. And in this case, the single witness who testifies to what happened, I really don't know what the positive part is, but I know what the credible part is, and I don't believe that the evidence shows that she's credible. And when you have not credible testimony, that's when courts have routinely heard that the corroborating evidence becomes a more important factor. And in this case, we don't have any of that corroborating evidence. So I'm not sure if that answers your question or not. Well, I see now what you're attempting to do is intertwine those aspects. Yes. The other issues that I would point out as it relates to the two of the State's main witnesses who testified was that they do have severe mental health history. They do have issues which the victim, there was no testimony as to when these issues started. It was pretty clear that it predated any alleged offense in this case. We have the other occurrence witness in this case with her very unusual outburst before she began, before the State even asked her a single question, the moment she sat on the witness stand. A review of the record shows that the State took precautions. They cleared out the courtroom. There was no objection to any of that. It is what it is. It's a bench proceeding. And despite anything, nothing really happening of any note, not even the first question coming out, not even the first question on cross-examination coming out. She has this outburst which prevents her from testifying. A witness is sometimes difficult for some witnesses to even get on the stand. I've seen the attitude of being a trial judge for 28 years. And I agree. It's unpredictable how people react to having to go into the courtroom and then to take the chair and be sworn in. It's very interesting, the behavior pattern. Because we're used to this system, but most people are not. And the funny thing is, even people who are used to the system, if they're called as witnesses, it's interesting to see their behavior then too. And I agree. It's not an easy thing to do. You're probably feeling a little anxious being in front of us today as well. A little bit, of course. You don't appear to be anxious. I would submit to the court, though, the moment you walked out here and I stepped up here and I started to scream uncontrollably and had to flee the room, certainly I'm sure you would be kind enough to perhaps address it in a more sensitive way or something like that. We would hope we would. Right. And if maybe I came back a second time and I apologized for my outburst and I explained the situation, you may not consider that first outburst against me. But in this case, when Ms. Christus did come back, what did she say? She said, I suffer from all these mental health issues. I take medication and my issues make it so that I have issues perceiving reality. And I take medication to deal with that. I'm sorry. She said that? Yeah. Difficulty perceiving reality? Yeah. She says that she suffered from hallucinations. She's taking medication. But she didn't use those words you said. No. I believe in my brief I outlined specifically what she said, including the parts where she says that sometimes she perceives things taking place as to not taking place. So if she perceives something is happening that's not really happening. And in this case, she said that she perceived a threat. But she acknowledged in trial that there was nothing threatening happening at the time that she walked into the courtroom and sat down. And so the reason why I bring that up in this instance, while we may be forgiving of the initial outbursts over her nerves for testifying, the issue is that if she is saying on the stand, sometimes I perceive things to happen that aren't really happening, we have to consider, well, back then, were there any issues going on? She was clearly upset by something that caused her to leave. Was it once again a perception of something that had happened that didn't really happen? Which seems to be in line with the fact that the victim never said anything inappropriate took place prior to the actual assault. Ms. Priestess was saying that they were cuddling and caressing each other inappropriately. The victim never said that. How old was she? The victim at the time? A little over 1300. So some of the grooming process that goes on when children are the targets of sex offenses makes them believe that the contact, which others might judge as beyond certain boundaries, is perfectly acceptable. You're aware of that, aren't you? I am. And to respond to that, we have these photographs of them wrestling. The attorney just heard all this, and he or she, I forget now because the case is a different one, saw the outburst in the courtroom of the girlfriend, knew that that had happened, and then obviously didn't forget about it as he evaluated her credibility. And I hope that you understand it's not our role here today to be the new target of theft. I agree with that, but I think the court's role is that if we look at this evidence as a whole and say that there's so much inconsistency here, so many issues with the credibility for the witness, the court is not bound by that trial judge's determination. And I think the cases that both parties cited to in their brief suggest that even looking at the case in the light most favorable to the State, and to comment on the grooming behavior, Ms. Pristis was there. She said that the photograph she took of the wrestling she didn't think was inappropriate. She wanted to memorialize it for the day to show that the kids were having fun. But what's interesting is when the mom testified, she says these are the only two times that the babysitting ever occurred. Mr. Checker, the named victim in the case, they said no, the babysitting took place often, several times, many times. We frequently spend time together. Why is this inconsistency here? If there was grooming behavior from previous occasions, none of that came out. No other evidence came out to say that there was a pattern of inappropriate behavior or anything like that. Unless there are any other questions. Thank you. Ms. Craft. Good morning. Good morning, Justice Ginsburg. May I please the court? Counsel. My name is Kelly Craft, and I represent the people of the state of Illinois in this matter. This court should affirm the lower court's ruling that the defendant committed the offenses of criminal sexual assault and aggravated criminal sexual abuse because the evidence was sufficient to prove guilt beyond a reasonable doubt. The standard of review in this case is after viewing the evidence in a light most favorable to the prosecution, any rational truer fact could have found the essential elements of the crime beyond a reasonable doubt. The truer fact is responsible to resolve conflicts in the testimony, weigh the evidence, and draw all reasonable inferences. The evidence in this case showed that when Gigi, the victim, was 13 years old and the defendant was 28 years old, the victim spent the night at the defendant's grandfather's house in January of 2014, and the defendant sexually assaulted and sexually abused the victim. The defendant was Gigi's babysitter, and Gigi thought of the defendant as a father figure. The state presented testimony from three witnesses, the victim, the victim's mother, and the defendant's girlfriend at the time, Ms. Priestess. The trial judge found their testimony credible and sufficient to prove guilt beyond a reasonable doubt. Only on two of the counts? On two of the counts, count two and count four. So, since the judge put the testimony of the victim on all four counts and found the evidence insufficient on two of those counts, is that inconsistent? Is that an inconsistent finding by the trial court that we should sit up and take notice of? No, it is not, because these are two separate incidents. During the trial, during the bench trial, the witnesses talked about two separate times. The evidence did show, when you take a look at the testimony from Ms. Priestess as well as the victim, there was cooperating testimony about an incident in January. There was also discussion about an incident that took place in February. He was acquitted of the incident in February. In this case, there was a lot more evidence to support the January conviction than the February one. What is that additional evidence? For the January one, Ms. Priestess testified about the night in question. She started off her testimony talking about the day. Ms. Priestess is one additional piece of evidence on the scales. What else? Ms. Gibson is the victim's mother. She talked about when she was working, which would corroborate the incident that took place in January. She testified that she worked a 48-hour shift on the night in January, in January. Okay. So you think that the judge's split verdict is explained by a difference in date only, that the mother didn't pinpoint February as a time when they were together? Priestess talked about the incident in January in great detail, as to what happened prior to the alleged sexual assault, sexual abuse, sexual assault. Gigi also discussed what took place in great detail on that evening. Gigi was the one that talked about the incident mostly in February, so there was much more evidence that was presented about the January incident than the February incident. Okay, and just so I understand your argument, the more evidence you're referring to is the girlfriend's testimony? Correct. And the mother's testimony about date? Correct. The mother testified regarding the date and the babysitting services as to the second cover as well, so do you think it was her testimony that caused the judge to find the defendant not guilty, or is it possible the judge just didn't believe the victim? I cannot speculate as to what the judge determined at that point. He found there was sufficient evidence to find the defendant guilty on the counts that took place in January. He did not make any findings when he convicted the defendant of the incidents in January. He didn't make any findings on the record. All he did was say that he found him guilty on counts two and counts four. And the court didn't explain the ruling, why the evidence was insufficient on two and four? No. You may return to your argument. Thank you. Thank you very much. Opposing counsel does bring up a few inconsistencies in the testimony, and the State acknowledges that there were a few inconsistencies in some of the testimony, but nothing that would create a reasonable doubt of defendant's guilt. For instance, he talks about the bill of particulars and the date, and as I was just talking about, the victim, she testified that this event took place in January. Her specific testimony, she was continually pressed on cross-examination as to the date. For a moment, she could not recall exactly the date or the month, but when she was pressed further, trial counsel had asked her, so your testimony is that you were not just following the suggestion of the prosecutor, but you were saying it was January of 2014 because your memory was refreshed. The victim responded, yes. Trial counsel said, it's your testimony that in that interview, you specifically indicated this incident at the grandfather's house occurred in January of 2014. Is that your testimony? She said, yes. Priestess also testified that the incident that was in question, the incident in January, took place sometime in January. She recalls the victim being there with her younger brother. She described the night in detail, including how defendant pulled the victim into his lap, as she described it, bridal style, and caressed her thighs and arms. She said that this incident was very unsavory as well as distasteful. Priestess, the victim, also described the night. She provided a lot of detail as to what took place that night, including the sexual abuse and how after the particular incident, defendant came into the bathroom and opened up the shower curtain and viewed her naked. Ms. Gibson, the victim's mother, also testified that, as I mentioned, that defendant babysat the victim and the victim's younger brother at the end of January and that she had worked a 48-hour shift as a nurse. And she recalled that date being January 25th and the 27th. So although the dates vary slightly from the state's bill of particulars, from priestess' as well as the victim's testimony, the opposing counsel is not claiming prejudice from that, just that it's unreasonable. But case law shows that a defendant is not prejudiced by lack of proof of the precise dates of the offenses. In child sex offense cases, the date of the offense is not an essential ingredient. As long as the state establishes the charged offenses were committed during the statute of limitations period and prior to the returning of the indictment, the date in the indictment then is not material. Further, opposing counsel does talk about the mental health issues of the victim as well as Ms. Priestess. They both testified extensively to their mental health issues, and they both testified that they have no problem realizing what reality is and that their medications do not make them confuse reality with fantasy. And as I mentioned, a lot of their testimony was corroborated. Ms. Craft, there are two parts, I think, to any one of these cases when they come before us. And one of them is the actual offense. And typically we have some other evidence that goes along with just the accusation that something happened, but in this case we don't. So all we have is a he said, she said with regard to the charged offense. So we have to try to determine, the court, the trial court had to try to determine from the surrounding circumstances about the reliability of the witnesses in order to determine whether or not the witness's accusation is credible. So Mr. Patel has pointed out a lot of inconsistencies in that evidence. And we're told under the Collins Standard, which you're relying on, that we have to look at that evidence in the light most favorable to the state. What is enough to determine whether or not there's sufficient doubt in all of this surrounding evidence to impact the belief one way or the other with regard to whether the sexual incident actually occurred? We have a lot of inconsistency in this case. The state would submit that there are some inconsistencies in this case and that it is the mission of the appellate court not to reweigh the evidence or resolve the inconsistencies. The trial court found that the evidence was sufficient. Look, we can vary from the trial court's determinations if we believe that the evidence was not sufficient so that there is a reasonable doubt as to whether or not the defendant actually committed the crime. We're not helpless here or without resources with regard to these decisions. Some of the inconsistencies that defendant, that opposing counsel discusses, for instance, he claims that the victim and this priestess disputed that defendant inappropriately caressed the victim's arms and thighs prior to priestess leaving the room. The evidence shows that the victim and defendant were sitting in a chair, bodies touching for more than an hour. The victim testified that we were kind of like squishing next to each other in the chair and as they were squishing next to each other, this priestess was sitting on the floor. This priestess testified that while Gigi and defendant sat in the chair, defendant pulled Gigi into his lap, bridal style, and caressed her thighs and arms. Priestess stated he just rubbed his hands up and down her thighs. While defendant did this, priestess said the victim had her arms wrapped around defendant's neck and was cuddling up to his chest. This priestess testified she became upset with the situation and left the room. This testimony of the victim and priestess demonstrates that inappropriate contact was taking place between a 13-year-old girl and a grown man. Regardless of whether that contact was described by someone as caressing, squishing, maybe wrestling, there is no dispute physical contact took place between defendant and the victim. And further, the defendant acknowledged to his priestess that he saw the victim naked in the shower. Gigi testified that after the sexual incident took place, that he came into the area where she was showering, opened up, removed the shower curtain, and looked at her in the eyes and said she was getting water all over the floor. That testimony strongly indicates, is a strong inference, that something inappropriate was taking place between a grown man and a 13-year-old girl. And again, as opposing counsel mentioned, testimony from just one witness, even when standing alone, may be sufficient to uphold the defendant's conviction. And yes, we only have the testimony from the victim that says this took place. Usually no one else would be in that situation to witness what took place. Ms. Priestess had left. Ms. Priestess had left for the night. She said she was disgusted as to what took place that night and ended up leaving. She did not witness what took place between the victim and defendant at that time, but she certainly witnessed what took place prior and the victim talked about what took place prior. Two minutes, please. Another inconsistency that opposing counsel mentioned was the number of times that babysitting took place for Gigi, for the victim and her brother. The victim testified that defendant babysat them overnight once every two months or something since she was 13. The mother testified that defendant babysat overnight only twice, January 25th and then on February 25th of the 27th. Again, slight contradictions in the amount of time that babysitting took place. So although there are slight contradictions between a mother and her young daughter regarding babysitting frequency, the facts do demonstrate the defendant spent a lot of time with the children that could be considered babysitting. Maybe the mother didn't consider it babysitting. Maybe the daughter considered it babysitting. At one time, defendant had lived at the mother's home. He rented a room off and on from 2002 to 2014. He also took the children to the park sometimes. The State contends that regardless of whether defendant babysat Gigi and her brother once, twice or a dozen times, the number is irrelevant because a sexual assault only does take one time. In closing, the defendant, the State feels, does not raise any challenges in this case that create a reasonable doubt. The evidence shows that when Gigi was 13 years old and defendant was 28 years old, Gigi spent the night at defendant's grandfather's house and defendant sexually assaulted and abused the victim. Is there any questions? Thank you very much. Mr. Patel, are you available? One of the comments that the State just made was that usually no one would be present when these assaults took place and usually that is the case, but in this case, the defendant's brother was in the room the entire time both alleged incidents took place. He was 10 and the State went through a pretty extensive motion practice in the middle of the trial to get his prior videotape statement to be substantively admitted because they believed he couldn't recall what took place that time. They chose, despite the judge saying yes, if you can show through live testimony that he cannot recall what took place that day, you have demonstrated that this is a past recollection recorded and we can consider this evidence as substantive. Yet the State chose not to call the 10-year-old who would now be 13 at the time. And I can concede some issue on some level that maybe it was their choice not to do it, not to put a 10-year-old or 13-year-old through the rigors of trial, but at the end of the day, it's proof beyond a reasonable doubt. It's a fair trial for my client with all due respect to the minor victim or the minor who was supposed to testify. They have, the State has the burden of proof beyond a reasonable doubt. And sometimes if you want to make an omelette, you've got to crack some eggs. And these are hard choices to make. These are tough choices to make. We could, they theoretically could have. Okay. But, you know, we're not here to talk about trial strategy. And I think the case law is pretty clear that if the State. We are talking about trial strategy. We're not appealing that. But the case law is that the State's failure to call a witness may create an inference that he would have given favorable testimony. But beyond that, the defendant doesn't have the burden to produce any witnesses or evidence. That presumption doesn't apply in this case. Because evidence was produced. Okay. But the fact that the defendant didn't call other witnesses or call police officers, I don't think that should be something that should be held against my client, particularly when the State. I'm not suggesting that. I'm just saying the presumption is not in this case. Yes. But I think in considering that the State went through extensive efforts, not prior to trial, not months before the trial, but in the middle of the trial, it was pretty clear that their trial strategy was to call the young boy. And then when they got the ruling that they wanted, for some reason, that's when the issue of we don't want to put him on the stand came up. Because, and I don't believe that that is flushed out on the record. I think we're all presuming that the State chose to do it because they didn't want to put a child through the rigors of testimony. Maybe the best approach to an appeal is not to hang our hats on presumptions or inferences. Right. That we can't blame them for the record. Right. I'm not sure the argument is persuasive. And maybe you can spend your time, better spend your time with somebody else. Yes. I believe one of Your Honor's first questions to the State essentially dealt with the issue of the splitting of the verdicts. As the Court made no ruling whatsoever in this case, we can unfortunately presume that he found some evidence credible to find guilt and unreasonable doubt. But some evidence wasn't sufficient as it relates to the second count. Ms. Gibson, the mom, does not add to either of the counts. Because she testified that babysitting took place in February. She testified that babysitting took place in January. I don't think Ms. Gibson is what a potential difference maker is for guilt and unreasonable doubt on the earlier counts. The potential difference maker, in my opinion, only comes in the form of Ms. Christos, who was not here for any of it. She didn't witness the assault. She didn't see the thing with the shower or anything like that. And I believe Justice McDade brought up the issue of the surrounding circumstances. There's a reason why this case wasn't, you know, Gigi, did Mr. Sheffer commit a sexual assault against you? Yes. What did he do? He put his finger in my vagina. That's not direct examination here. Because that's not the surrounding circumstances that would give a reviewing court or a trial judge or a trial effect the satisfaction that this is guilt and unreasonable doubt. One minute, please. What it is are those surrounding circumstances. The State brought up this caressing that Ms. Christos saw versus the squishing on the chair. Gigi was directly asked, did any other touching take place besides the alleged assault? She said no. So even when she said we were squishing in the chair, she wasn't considering whatever took place in that chair to be inappropriate in any way. And she certainly didn't describe sitting on his lap, caressing his chest, birdie style, that he was giving me physical attention or affection as a grooming behavior or something like that. There's a vast difference between what Ms. Christos described and what the victim described as what took place in that chair. That is not a minor inconsistency. And so I would submit to the Court that we don't have those surrounding circumstances. When Gigi was confronted, as the State pointed out about the date, I encourage Your Honors to please review that portion of the record. It's during cross-examination. Trial counsel is clearly trying to confirm her testimony as to date, as he then begins the process of impeaching her with the prior statements that were made, indicating when it all took place. Unless there are any other further questions, that's all I have. Thank you very much. Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision.